UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

KEY WEST DIVISION

IN ADMIRALTY

CASE NO. 4:18-CV-10118-JLK

LEXINGTON INSURANCE COMPANY,
a Foreign Corporation,

    Petitioner,

v.

NICOLE GERSBECK, an Individual,
ISLAMORADA ASSET MANAGEMENT, INC.,
a Florida corporation, DAVID CHAMGPAGNE,
an Individual, and M&M VENTURES, INC.,
a foreign corporation.

    Respondents.
_____/

## OPINION AND ORDER GRANTING DECLARATORY JUDGMENT

THIS CAUSE came before the Court upon Petitioner, LEXINGTON INSURANCE COMPANY ("Lexington"), Motion to Re-Open Case and for Entry of Final Judgment Against Respondents, ISLAMORADA ASSET MANAGEMENT, INC. ("IAMI") and DAVID CHAMPAGNE ("Champagne") (collectively, the "Respondents"). A Clerk's default was entered against IAMI and Champagne [D.E. 18] and to date, IAMI and Champagne have failed to appear in this action and failed to file an answer or defensive motion to Lexington's Petition for Declaratory Relief [D.E. 1]. Accordingly, this matter is ripe for disposition as to them.

### INTRODUCTION

This is an action for declaratory relief where Lexington is seeking a judicial

determination as to its rights and obligations under a certain Dive Boat Liability Policy bearing Policy No. 023462645 and Dive Boat Marine Certificate No. 0140078, which was issued to IAMI for the dive vessel GIANT STRIDE and bearing effective dates of July 22, 2013 through July 22, 2014 (the "Policy"). In this action, Lexington named several Respondents – IAMI, Mr. Champagne, M&M Ventures[1] and Nicole Gersbeck. Lexington now seeks the entry of Final Judgment against Respondents, IAMI and Champagne. Lexington argues, *inter alia*, that final judgment is appropriate under Fed. R. Civ. P. 55 (b)(2) because a Clerk's Default was already entered against IAMI and Champagne on September 12, 2018 [D.E. 18]. To date, these Respondents have failed to enter an appearance and likewise failed to respond to any pleading, including the Petition for Declaratory Relief [D.E. 1]. Upon careful review of the record, and as set forth more fully below, this Court finds that entry of a final judgment against IAMI and Champagne is appropriate.

## PROCEDURAL HISTORY

1. On July 20, 2018, Lexington filed this declaratory judgment action seeking a ruling from this Court that it does not have a duty to defend or indemnify its Named Insured, IAMI, and David Champagne, as President of IAMI, under the Policy in relation to an incident that occurred on July 1, 2014. *See* D.E. 1, ¶¶48-87.

2. On August 13, 2018, IAMI and Champagne were served with a copy of the Summons, Petition for Declaratory Relief and the exhibits attached thereto. *See* D.E. 17, Comp. Ex. A., Return of Service.

---

[1] Lexington and M&M Ventures executed a Stipulation & Policy Release dated August 30, 2018, and on September 4, 2018, the Court an Order dismissing M&M Ventures with prejudice from this action [D.E. 16]

2

3. IAMI and Champagne failed to respond to Lexington's Petition for Declaratory Relief within twenty-one (21) days, or by September 4, 2018, as was required by Rule 12 of the Federal Rules of Civil Procedure.

4. On September 11, 2018, Lexington moved for entry of Clerk's Default [D.E. 17], which was granted on September 12, 2018 [D.E. 18].

5. Thereafter, on October 02, 2018, Lexington timely moved for entry of default final judgment pursuant to Fed. R. Civ. P. 55 (b)(2) against IAMI and Champagne [D.E. 24]. To date, IAMI and Champagne have failed to appear in this action or file an answer or present a defense by motion to Lexington's Petition for Declaratory Relief [D.E. 1].

## LEGAL STANDARD

*Legal Standard for Entry of Default Judgment*

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step procedure for obtaining a default judgment. First, when a defendant fails to plead or otherwise defend the lawsuit, the clerk of court is authorized to enter a clerk's default. *See* Fed. R. Civ. P. 55 (a) (2018). Second, after entry of the clerk's default, if the defendant is not an infant or incompetent person, the court may enter a default judgment against the defendant for not appearing or defending the lawsuit. *See* Fed. R. Civ. P. 55(b)(2) (2018). Rule 55 characterizes an entry of default and a default judgment as two separate events; therefore, prior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55 (b)(2), there must be an entry of default as provided by Rule 55 (a). *See* Fed. R. Civ. P. 55 (2018).

"The effect of a default judgment is that the defendant admits the plaintiff's

well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Buchanan v. Bowman*, 820 F. 2d 359, 361 (11th Cir. 1987) (internal quotation and citation omitted).

After a default has been entered by the Clerk pursuant to Rule 55(a), the Court must then review the sufficiency of the complaint before determining whether the moving party is entitled to a default judgment pursuant to Rule 55 (b). *See United States v. Kahn*, 264 F. App'x 855, 858 (11th Cir. 2006) (citing to *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F. 2d 1200, 1206 (5th Cir. 1975)). "While a complaint . . . does not need detailed factual allegations . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

If the admitted facts are sufficient to establish liability, then the Court must ordinarily ascertain the appropriate amount of damages and enter final judgment in that amount. *Nishimatsu Constr. Co., Ltd.*, 515 F. 2d at 1206. However, in this action for declaratory relief, damages are not at issue, and so no further consideration of damages is required. *See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) (stating that "Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone. . . We have held that no such hearing is required where all essential evidence is already of record.") (citations omitted).

*Florida Law Regarding an Insurer's Duty to Defend or Indemnify the Insured*

In Florida, an insurer's duty to defend the insured depends solely on the allegations filed in the complaint. *Tropical Park, Inc. v. United States Fidelity and Guaranty Co.*, 357 So. 2d 253, 256 (Fla. 3d DCA 1978). "The complaint must allege facts which fairly bring the case within coverage. ... If, [however], the complaint alleges facts partially within and partially outside the scope of coverage, the insurer is obligated to defend the entire suit." *Id.* If after examining the allegations of the complaint there remains any doubt regarding the insurer's duty to defend, then the presumption is in favor of the insured. *Lawyers Title Ins. Corp. V. JDC (America) Corp.*, 52 F.3d 1575, 1580-81 (11th Cir. 1995). There is no duty to defend the insured when "the allegations of the initial complaint do not allege facts which would bring the case within the coverage of the insurance policy." *Chicago Title Ins. Co. v. CV Reit, Inc.*, 588 So. 2d 1075, 1075-76 (Fla. 4th DCA 1991). An insurer has no duty to indemnify when it has no duty to defend the insured. *See Spencer v. Assurance Co. of America*, 39 F.3d 1146 (11th Cir. 1994).

## DISCUSSION

Upon careful review and consideration of the Petition for Declaratory Relief [D.E. 1], Motion to Re-Open Case and for Entry of Default Final Judgment [D.E. 24], and other relevant filings, this Court finds that the Petition for Declaratory Relief shows a "case of actual controversy" within this Court's jurisdiction. *See* 28 USC §2201. Lexington has established that IAMI and Champagne were properly served, and a Clerk's Default was entered against them when they failed to answer

5

or otherwise respond to the Petition for Declaratory Relief. *See* D.E. 24, ¶¶7-9.

Furthermore, the Petition for Declaratory Relief adequately states a claim upon which relief may be granted. The Petition for Declaratory Relief provides sufficient factual allegations and evidence showing that IAMI and Champagne did not apply for and purchase crew coverage for an additional premium and therefore no such coverage exists under the Policy. Moreover, it has pled sufficient factual allegations demonstrating that there is no coverage for the claims asserted by Nicole Gerbeck in an action filed against IAMI, Champagne and M&M in the Southern District of Florida, Key West Division, styled *Nicole Gersbeck v. Islamorada Asset Management, Inc., d/b/a Key Dives, et al.*, Case No.: 4:16-CV-10026-JLK (the "underlying action.") .

In particular, the following well-pleaded allegations in the Petition for Declaratory Relief [D.E. 1] are admitted by the insureds and establish that:

- Lexington underwrote a PADI Dive Boat Liability Master Policy bearing number 023462645 and issued Certificate number 201400078 to Named Additional Insureds, IAMI and M&M, for the dive vessel GIANT STRIDE. The subject Policy bore effective dates of July 22, 2013 through July 22, 2014 (herein "the Policy"). *See* D.E. 1, ¶ 26.

*The Policy's Relevant Provisions*

- The Policy provides as follows:

AGREEMENT

*In consideration of the premium payment* and compliance with policy provisions, We will provide the insurance on the terms of this policy, subject to the conditions, limitations, exclusions, definitions, and

warranties contained herein or endorsed hereon. *The coverage provided by this policy is also granted subject to the statements made by the Named Insured, or his agent, on the application signed by the Named Insured and made part of this policy.*

DEFINITIONS

16. "You" and "Your" refer to the Named Insured *on the Certificate of Insurance.*

SECTION B - LIABILITY INSURANCE

1. COVERAGE PROVIDED

Subject to the exclusions below, We will pay for Bodily Injury or Property Damage for which the Insured Person becomes legally liable to pay through the ownership, maintenance or use of the Vessel, *up to the limit stated in Section B of the Declaration Page ....*

2. EXCLUSIONS

Nevertheless, We will not pay any amount:

A. For any claims for Bodily Injury or Death occurring anywhere other than actually aboard the insured Vessel or the insured Vessel's dive platform or boarding ladder. In no event does this policy extend to or provide coverage for any claims for Personal Injury or Death for any person(s) actually in the water, or while under the supervision of a Divemaster, Dive Instructor or Assistant Dive Instructor, or engaged in water sports of any nature,, including but not limited to waterskiing, aquaplaning, parasailing, scuba diving, snorkeling or operating a jet ski or similar craft.[2]

B. Awarded to any person except when Crew Coverage is purchased under any Federal or State Compensation law or act.

C. *For any damages resulting from Bodily Injury or Death to Captain and/or Crewmember(s) unless, You request to included Captain and/or Crewmember(s) on Your policy, and same is agreed by Us and the number of Captain and/or Crewmember(s) are noted on the Declaration Page, Section B, Crew Liability, or by separate*

---

[2] Endorsement #003 CREW COVERAGE ENDORSEMENT (in water) provides, in part, that "for and in consideration of an additional premium, section B, part 2, exclusions paragraph A is amended to include the following: This exclusion does not apply to crewmembers while in the water and performing crew duties."

7

*endorsement.*

## SECTION F – GENERAL CONDITIONS

Applicable to All Sections of this Policy

CAPTAIN AND/OR CREWMEMBER(S) WARRANTY: Warranted by You that any Captain and/or Crewmember(s), shall be duly licensed or, as applicable, duly certified by the competent government authority. It is agreed that the number of Captain and/or Crewmember(s) shall not exceed the number stated on the Declaration Page. Coverage shall include claims for Bodily Injury and Death to a Captain and/or Crewmember(s), as well as those sums payable to maintenance and cure under general maritime law, excluding any claim for Bodily Injury and Death occurring while in the water or in connection with any water activity[3], unless for the sole purpose of rescuing or safeguarding the insured Vessel from imminent peril of for the sole purpose of an emergency life saving situation......

*Not withstanding any other provision of this policy, the limit of liability for claims of any nature for Captain and/or Crewmember(s) shall not exceed the amount shown on the Certificate of Insurance under Crew Liability, and further, such limit is included within the limit of liability shown in Section B of the Certificate of Insurance, and there is no addition[al] coverage limit.*

*IAMI Did Not Apply for or Pay Additional Premium for Crew Coverage*

- On July 23, 2013, David Champagne, as President of IAMI, completed and executed the following forms as part of the renewal and placement of the Policy:

   a. 2013-2014 PADI ENDORSED DIVE BOAT (MARINE) INSURANCE RENEWAL APPLICATION), wherein Champagne expressly indicated "No" in response to the question "[d]o you want coverage for paid crew while they are in water?" *See* D.E. 1, ¶28, Ex. D. The application and these statements of the insured are expressly incorporated into the

---

[3] Endorsement #003 CREW COVERAGE ENDORSEMENT (in water) provides, in part, that Section F – General conditions - captain and/or crewmember(s) warranty, the following wording is deleted. "Excluding any claim for bodily injury and death occurring while in the water or in connection with any water activity."

8

Policy pursuant to the "AGREEMENT" provision cited above.

b. CREW EXCLUSION ACKNOWLEDGEMENT wherein Champagne acknowledged that the Policy did not cover for "liability resulting from injuries sustained by a crewmember including your captain(s)." *See* D.E. 1, ¶29, Ex. E.

c. CREW EXCLUSION ACKNOWLEDGMENT - IN WATER form wherein Champagne acknowledged that the Dive Boat Policy did not cover for "liability resulting from injuries sustained by a crewmember including your captain(s) while in water." *See* D.E. 1, ¶ 30, Ex. F.

d. DIVE BOAT MARINE PROPOSAL wherein Champagne accepted and executed the renewal proposal wherein Lexington specified that crew coverage was not being offered or purchased. *See* D.E. 1, ¶31, Ex. G.

- The Policy thereafter was issued with effective dates of July 22, 2013 through July 22, 2014. *See* D.E. 1, ¶31-32. Section B of the Certificate states under Maximum Number of Crew: "0" and states under Limit of Insurance – Crew Liability: "Not Covered" and under Limit of Insurance – Crew in the Water: "Not Covered." *See* D.E. 1, ¶32.

*Subject Incident*

- On July 1, 2014, Gersbeck was employed and working for IAMI and Champagne as a dive instructor and crewmember when she completed two dives in the water that resulted in decompression sickness. As a result, Gersbeck was left with permanent and debilitating injuries. *See* D.E. 1. ¶¶13-19.

9

- Gersbeck filed suit against IAMI, Champagne and M&M[4] seeking to recover damages from IAMI, Champagne and M&M for the injuries she suffered while in service of the subject vessel GIANT STRIDE. *See* D.E. 1. ¶¶13-19.

Because of IAMI's and Champagne's refusal to apply for and purchase crew coverage for an additional premium, Lexington alleges that there is no coverage for bodily injury to crewmember(s) either in or out of the water because no coverage for bodily injury to crewmember(s) was ever purchased by IAMI/Champagne or issued by Lexington. *See* D.E. 1 ¶¶48-87. As such, Lexington seeks a declaration that it has no duty to defend or indemnify any Named Additional Insured on the Policy or to pay any sums to any party for the claims asserted by Gersbeck in the underlying action since no contract of insurance for crew coverage was ever formed between Lexington and its insureds. *See* D.E.1, ¶¶48-63.

Based upon the terms of the Policy, the executed declination forms (which were made part of the Policy), and the well-pleaded allegations of the Petition for Declaratory Relief which have been admitted by IAMI and Champagne, there is no coverage under the Policy for claims relating to injuries suffered by any crewmember while performing crew duties either in or out of the water. The undisputed record evidence demonstrates that IAMI never applied for and purchased such coverage; therefore crew coverage was not issued by Lexington and does not exist under the Policy.

In the underlying action, to the extent that Gersbeck alleges that she was

---

[4] For ease of reference the lawsuit filed by Gersbeck against IAMI, Champagne and M&M in the Southern District of Florida, Key West Division, styled Nicole Gersbeck v. Islamorada Asset Management, Inc., d/b/a Key Dives, et al., Case No.: 4:16-CV-10026-JLK shall be referred as the "underlying action."

employed and working for IAMI and Champagne as a dive instructor and crewmember when she completed two dives in the water that resulted in decompression sickness and caused her injuries, there is no coverage under the Policy for Gersbeck's claims. Accordingly, based upon Florida law and the well-pleaded allegations of the Petition for Declaratory Relief, this Court has determined that Lexington has no obligation to defend or indemnify IAMI and Champagne or to pay for any of the bodily injury damages asserted by Gersbeck in the underlying action.

## CONCLUSION

Accordingly, it is hereby ORDERED, ADJUDGED, and DECREED that:

1. Lexington's Motion for Entry of Final Judgment [D.E. 24] against IAMI and David Champagne is hereby GRANTED in favor of Lexington.

2. This Court finds and declares that the Policy does not provide any coverage for claims for injuries suffered by crewmembers while performing crew duties. Therefore, Lexington has no obligation to defend or indemnify IAMI and Champagne for claims asserted by Gersbeck in the underlying action; or to pay for any bodily injury damages asserted or awarded to Gersbeck in the underlying action.

3. Final judgment is hereby entered in favor of Petitioner, LEXINGTON INSURANCE COMPANY, and against Respondents, ISLAMORADA ASSET MANAGEMENT, INC. and DAVID CHAMPAGNE.

4. All other pending motions are hereby DENIED as moot.

5. The Clerk is directed to CLOSE this case.

DONE AND ORDERED in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse in Miami, Florida, on this 2nd day of November 2018.

*James Lawrence King*
JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

cc: All counsel of record